# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| **DARRYLE POLLACK**, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | Case No. 04 C 5613 |
| | ) | |
| v. | ) | Magistrate Judge |
| | ) | Martin C. Ashman |
| **ROSALIND FRANKLIN UNIVERSITY** | ) | |
| f/k/a **FINCH UNIVERSITY/** | ) | |
| **CHICAGO MEDICAL SCHOOL,** | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

This motion is before the Court on the motion of Plaintiffs, Darryle Pollack, et al.

("Pollack" or the "Plaintiffs"), to enforce a clause in a settlement agreement Pollack entered with

Defendant, Rosalind Franklin University ("Rosalind Franklin"). The parties have consented to

have this Court conduct any and all proceedings in this case, including the entry of final

judgment. *See* 28 U.S.C. § 636(c) ; Local R. 73.1(a). For the reasons set forth below, the

Plaintiffs' motion is granted.

## I.  Background

Pollack seeks in this motion to enforce Paragraph 3 of a Confidential Settlement

Agreement ("Settlement Agreement" or "Agreement") entered into with Rosalind Franklin on

December 3, 2004. (Pl.'s Mem. at 1-2.) This Settlement Agreement marked the end of litigation

that resulted when Rosalind Franklin discontinued its "T/Tn Antigen Vaccine Study" ("Study"),

which studied the effects of the "Springer vaccine" on breast cancer survivors. (Def.'s Resp.

at 2.) With the end of the Study, the Plaintiffs, who were breast cancer survivors participating in the Study, were no longer given the Springer vaccine. (*See* Pl.'s Mem. at 1.) Litigation ensued over whether, among other things, Rosalind Franklin should continue to provide the vaccine to the Plaintiffs, and the parties settled the dispute on December 3, 2004, at which time the Settlement Agreement was entered. (Pl.'s Mem. at 2.) Under the Agreement, Rosalind Franklin would place $2.5 million into a trust, which would be used to fund further research of the vaccine. (Pl.'s Mem. Ex. A, ¶2.) Also, Rosalind Franklin was to place an additional $1 million into the trust in the event the Plaintiffs received "FDA approval for the resumption of the T/Tn Antigen Vaccine Study" within eighteen months of Rosalind Franklin's receipt of the Plaintiffs' signed releases.[1] (Pl.'s Mem. Ex. A, ¶3.) Specifically, paragraph 3 of the Settlement Agreement ("Paragraph 3") provides:

> The plaintiffs, or their designees, will have 18 months to obtain approval from the FDA for a resumption of the T/Tn Antigen Vaccine Study. If the plaintiffs do not succeed in obtaining the necessary FDA approval for the resumption of the T/Tn Antigen Vaccine Study within 18 months from the University's receipt of the fifty (50) executed releases, the University will have no further obligation to pay any additional monies to the plaintiffs or the plaintiff's Trust. However, if the plaintiffs do obtain the necessary FDA approval for the resumption of the T/Tn Antigen Vaccine Study, the University shall, but no earlier than 12 months after the University's receipt of all fifty (50) executed releases, pay to the plaintiffs' Trust an additional sum of $1,000,000.00. The University shall not be obligated to pay this $1,000,000.00 earlier than 12 months from the date of the University's receipt of all fifty (50) executed releases, and the outside time limit within which the plaintiffs must secure the necessary FDA approval for the resumption of the

---

[1] Rosalind Franklin states in its brief that the "18 month period expired no later than June 3, 2006." (Def.'s Resp. at 2.) Regardless of the exact date the eighteen-month period expired, the parties both agreed at oral argument that the eighteen-month period had not yet expired during the operative time period for this issue, namely approximately February and March 2006.

> T/Tn Antigen Vaccine Study is 18 months from the date of the University's receipt
> of the plaintiffs' fifty (50) executed releases.

(*Id.*)

Pursuant to the trust and Agreement, the trustee appointed Samueli Institute for Information Biology ("Samueli") to take steps toward resuming the Study. (Pl.'s Mem. at 2.) On February 28, 2006, the Samueli researchers, led by Dr. Christine Goertz, conferred with the Food and Drug Administration ("FDA"), specifically the FDA's Center for Biologics Evaluation and Research ("CBER"), regarding Samueli's intention to resume the Study. (Pl.'s Mem. at 3; Pl.'s Mem. Ex. B1.) During this teleconference, called a "pre-IND teleconference," Samueli posed questions seeking CBER guidance and suggestions regarding the Study. (*See* Def.'s Resp. at 3; Pl.'s Mem. Ex. B2.) The content of the teleconference was memorialized in a CBER memo, dated March 13, 2006, which states that Samueli had "plans to reinitiate the protocol . . . formerly sponsored by Finch University." (Pl.'s Mem. Ex. B2, at 1.) The purpose of the teleconference was also to "discuss the investigational product in order to help prevent clinical hold issues from arising and to make the application process more efficient." (*Id.*)

The parties dispute whether the condition in Paragraph 3 is met by this teleconference. The Plaintiffs seek in the instant motion to enforce Paragraph 3 on the theory that Rosalind Franklin's obligation to pay the additional $1 million was triggered by Samueli's teleconference with CBER and the CBER memo.

## II. **Discussion**

The dispute centers around what is meant by Paragraph 3's language, "obtain approval from the FDA for a resumption of the T/Tn Antigen Vaccine Study." The parties dispute whether or not explicit FDA approval is needed for a simple "resumption" of the Study, although FDA approval is required for various stages of the Study itself.[2] The issue then becomes whether Paragraph 3 contemplates FDA approval of the simple resumption of the Study as the event that triggers Rosalind Franklin's obligation to place an additional $1 million in the trust, or whether Paragraph 3's triggering event is FDA approval of some step in the Study, specifically the step of administering the vaccine to human subjects.

The Plaintiffs argue that Paragraph 3 should be construed to be triggered by FDA approval of the simple resumption of the Study. According to the Plaintiffs, this FDA approval was given in the teleconference with CBER. (*See* Pl.'s Mem. at 3; Pl.'s Reply at 1.) The Plaintiffs rely on an affidavit from Dr. Goertz, in which she states that "[a]t the 28 February 2006 meeting, [Samueli] presented its proposed protocol for resuming the Study and CBER authorized [Samueli] to proceed and offered further directions and suggestions to [Samueli] for doing so." (Pl.'s Mem. Ex. B1, ¶4.) Although CBER apparently did not explicitly approve the resumption, the depth of Samueli's questions and the specificity of CBER's responses lead this Court to believe that Samueli intended to resume this Study, and that CBER was aware of this and

---

[2] The parties do not dispute that FDA approval is needed before the vaccine may be administered to human subjects, and this FDA approval follows an investigational new drug application ("IND"). (*See* Def.'s Resp. at 3; Pl.'s Reply at 1; *see also* 21 C.F.R. § 312.40(b).) As Rosalind Franklin points out, Samueli had not filed an IND as of the February 28, 2006 teleconference, and there is no evidence that Samueli has filed an IND since that time. (Def.'s Resp. at 3.) The parties disputed at oral argument whether FDA approval is needed before an IND may be filed.

- 4 -

implicitly authorized the Study's resumption. In addition to stating that Samueli's intention was to reinitiate the Study, the CBER memo commented favorably on many of Samueli's questions. These favorable comments and the added direction that CBER gave in its answers lead this Court to believe that Samueli advanced the Study with the FDA's imprimatur.

Rosalind Franklin argues that the phrase "obtain approval from the FDA for a resumption of the T/Tn Antigen Vaccine Study" means that Samueli must obtain FDA approval for administering the vaccine on human subjects. (Def.'s Resp. at 3-4.) Because Samueli has not obtained FDA approval for administering the vaccine on human subjects, i.e., it has not filed an IND that the FDA has approved, Rosalind Franklin argues that Samueli has not satisfied Paragraph 3 and Rosalind Franklin is not obligated to contribute the $1 million under Paragraph 3. (*Id.*) Although Rosalind Franklin's argument is not without appeal, the Court ultimately is not convinced. The Plaintiffs do not dispute that FDA approval is needed for administration of the vaccine to human subjects. (*See* Pl.'s Reply at 1.) However, Paragraph 3 does not mention that payment of the $1 million is to be conditioned on FDA approval for administering the vaccine to humans. Nor is payment conditioned on FDA approval of an IND. If the parties had intended either of these milestones to be the triggering event, Paragraph 3 easily could have included either as the event that triggers Rosalind Franklin's obligation to pay the $1 million into the trust.

What does trigger Rosalind Franklin's obligation is FDA approval for "the resumption of the Study," and this Court is left to determine whether this is met based on the evidence available.[3] Neither party's brief cites any case law, and the relevant evidence submitted includes

---

[3]At oral argument, the parties agreed that this motion should be decided on the papers then filed.

the Goertz affidavit and the CBER memo. The Goertz affidavit states that the FDA "authorized" Samueli to "proceed" with the Study. (Pl.'s Mem. Ex. B1, ¶4.) That "authorization" equals "approval for the resumption of the Study," a conclusion supported by the content of the CBER memo, which accepted portions of Samueli's plan to resume the Study and gave advice as to the balance. (*See* Pl.'s Mem. Ex. B2.) For these reasons, this Court finds that Paragraph 3 is triggered and Rosalind Franklin must pay $1 million into the trust under the terms of the Settlement Agreement.

We also note that Rosalind Franklin spent a significant proportion of its brief explaining why it did not unduly delay Samueli's progress toward resuming the Study. (Def.'s Resp. at 4-6.) Although the Plaintiffs suggest at one point in their brief that the Study has progressed "notwithstanding impediments for which [Rosalind Franklin] is responsible," (Pl.'s Mem. at 2), the Plaintiffs did not rely heavily on this argument. Because this Court finds Paragraph 3 is met notwithstanding any possible delay, we need not and do not decide issues of improper delay tactics.

### III. **Conclusion**

For the foregoing reasons, this Court finds that Samueli has received FDA approval for resumption of the Study under Paragraph 3. Thus, the Plaintiffs' motion to enforce Paragraph 3

of the Settlement Agreement is granted. Rosalind Franklin is hereby ordered to pay $1 million to the trust within 10 days.

**ENTER ORDER:**

**MARTIN C. ASHMAN**
United States Magistrate Judge

Dated: October 4, 2006.

Copies have been mailed to:

HALL ADAMS, III, Esq.
The Law Offices of Hall Adams, III
77 West Wacker Drive
Suite 4800
Chicago, IL 60601

Attorney for Plaintiffs

ERIC A. OESTERLE, Esq.
Sonnenschein Nath & Rosenthal, L.L.P.
7800 Sears Tower
233 South Wacker Drive
Chicago, IL 60606

Attorney for Defendant